UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAMILETH ALDANA SERRANO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-08408-EKL<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 2, 3 |

Before the Court is Petitioners' *Ex Parte* Motion for Temporary Restraining Order. TRO Mot., ECF No. 3. On October 2, 2025, Petitioners filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order, against Respondents Acting Field Office Director Sergio Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. ECF Nos. 1-3. Petitioners ask this Court to (1) order their immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring them out of this District or deporting them during the pendency of the underlying proceedings. *See* Notice of Mot., ECF No. 2. For the foregoing reasons, the TRO is GRANTED as modified below.

**I.   BACKGROUND**

According to the record before the Court, Petitioners Yamileth Aldana Serrano (Colombia), Edvin Manuel Fernandez Sanchez (Guatemala), Yong Qi (China), Rafaela del Rosario Salgado Sotomayor (Nicaragua), and Andres Daniel Vasquez Oviedo (Colombia) are individuals with pending applications for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. for Writ of Habeas Corpus ¶¶ 9-13, ECF No. 1. All five petitioners allege that they were "apprehended by immigration officials at the border," determined

1  to pose "little if any flight risk or danger to the community," and released into the community
2  under 8 U.S.C. § 1226(a) to wait for their immigration court dates. *Id.* ¶¶ 49-53. Each Petitioner
3  alleges that he or she has complied with all applicable ICE and immigration court obligations and
4  has no criminal history anywhere in the world. *Id.*

5  On October 2, 2025, Petitioners each appeared in-person at the San Francisco Immigration
6  Court for master calendar hearings before an immigration judge. *Id.* ¶ 54. In each case, the
7  government orally moved to dismiss the Petitioners' cases, purportedly for the purpose of placing
8  Petitioners in "expedited removal" proceedings. *Id.* ¶¶ 1, 54. The presiding immigration judge
9  did not grant the motions; instead, he gave Petitioners time to respond to their respective motions
10 and set their hearings for a future date. *Id.* ¶ 54. Minutes after Petitioners exited the courtroom,
11 Department of Homeland Security agents arrested them. *Id.* ¶ 1. Petitioners are currently being
12 detained at 630 Sansome Street in San Francisco, California. *Id.* ¶ 10-13.

13 On October 2, 2025, this Petition was filed. Although the TRO application was styled as
14 an *ex parte* request, Respondents had actual notice and filed an opposition. Opp., ECF No. 5; *see*
15 *also* Decl. of Diana Mariscal ¶¶ 4-5, ECF No. 3-1. In the motion, Petitioners contend that their
16 arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively
17 (because Respondents allegedly have no valid interest in detaining them) and procedurally
18 (because they were not provided with a pre-detention bond hearing).

19 **II.    LEGAL STANDARD**

20 The standard for issuing a temporary restraining order is substantially identical to the
21 standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th
22 Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely
23 to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of
24 preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in
25 the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).
26 "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser
27 showing than likelihood of success on the merits – then a preliminary injunction may still issue if
28 the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are

1  satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal

2  quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final

3  two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

4        An injunction is a matter of equitable discretion and is "an extraordinary remedy that may

5  only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555

6  U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing

7  irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no

8  longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting

9  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

10 423, 439 (1974)).

**III.  DISCUSSION**

      Petitioners have demonstrated a likelihood of success on the merits of their claims that their ongoing detention violates their procedural due process rights under the Fifth Amendment. Petitioners have a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioners to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ---, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ---, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

      In their opposition, Respondents argue that the Petitioners are "applicants for admission" to the United States who are "subject to mandatory detention under 8 U.S.C. § 1225(b)," and that the three-part test articulated in *Mathews* does not apply. Opp. at 1, 16. Courts in this district have uniformly rejected this theory. *See, e.g.*, *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *2-5 (N.D. Cal. Sept. 18, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *5-12 (N.D. Cal. Sept. 12, 2025); *Jimenez Garcia v. Kaiser*, 25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Calderon v. Kaiser*, No. 5:25-cv-06695, 2025 WL 2430609 (N.D. Cal. Aug. 22, 2025). The Court's independent review found no grounds for a different conclusion at this stage. Therefore, the Court finds that Petitioners have demonstrated a

3

likelihood of success on the merits, or at least raise serious questions going to the merits.

Petitioners have also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioners face is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioners' detention without a hearing is "likely unconstitutional" that they have "also carried their burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioners] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioners if it ultimately demonstrates, by clear and convincing evidence, that their detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor."

*Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioners is appropriate to return them to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioners' likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioners satisfy all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Roa v. Off. Fulfilling Duties of Field Off. Dir.*, No. 25-cv-07802-RS, 2025 WL 2637565 (N.D. Cal. Sept. 12, 2025) (granting temporary restraining order on behalf of multiple petitioners); *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is

needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**IV.   ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioners' Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.  Respondents are **ORDERED** to immediately release Petitioners from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioners without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioners from the United States.[1]  This Order shall remain in effect until October 16, 2025.

Respondents shall provide a status report confirming Petitioners' release by October 3, 2025.  Respondents are **ORDERED TO SHOW CAUSE** in writing by October 7, 2025, at 5:00 p.m., why a preliminary injunction should not issue.  Petitioners may file a response by October 10, 2025, at 5:00 p.m.  A hearing on the Order to Show Cause is set for October 16, 2025, at 10:30 a.m. in Courtroom 7.  Should parties seek to extend the briefing schedule or continue the hearing, they may so request by administrative motion and stipulation pursuant to Local Rule 7-11.

**IT IS SO ORDERED.**

Dated: October 2, 2025

Eumi K. Lee
United States District Judge

---

[1] Petitioners also ask the Court to order that they remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).