UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAMILETH ALDANA SERRANO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-08408-EKL<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Petitioners Yamileth Aldana Serrano, Edvin Manuel Fernandez Sanchez, Yong Qi, Rafaela del Rosario Salgado Sotomayor, and Andres Daniel Vasquez Oviedo are asylum seekers who separately fled to the United States in 2023 and 2024. Petitioners have no relationship to each other, except each was arrested by U.S. Department of Homeland Security ("DHS") agents on October 2, 2025, after appearing for their hearings at the San Francisco Immigration Court. Each alleges that he or she has lived in California for over a year and has fully complied with all applicable U.S. Immigration and Customs Enforcement ("ICE") and immigration court obligations.

Immediately following their arrest, Petitioners filed a writ of habeas corpus and a motion for a temporary restraining order ("TRO") against Respondents, claiming that their conduct violated Petitioners' procedural and substantive due process rights. ECF Nos. 1-3. On October 2, 2025, the Court issued a TRO requiring Respondents to release Petitioners, and enjoining Respondents from re-detaining them without notice and a pre-arrest hearing before a neutral decisionmaker and from removing Petitioners from the United States. ECF No. 6. The Court further ordered Respondents to show cause why a preliminary injunction should not issue. Having carefully reviewed the parties' briefs and the arguments therein, the Court GRANTS Petitioners'

request for a preliminary injunction.

I.  **FACTUAL BACKGROUND**

Petitioners are five asylum seekers from China, Colombia, Guatemala, and Nicaragua. Petitioners arrived separately in the United States between November 2023 and May 2024. Respondents are Acting Field Office Director Sergio Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. The following information is set forth in Petitioners' habeas petition and in DHS documents filed by Respondents with their response to the order to show cause.

Petitioner Yamileth Aldana Serrano is an asylum seeker from Colombia. After entering the United States from Mexico in November 2023, she was arrested by DHS Border Patrol and transported to the San Diego Area Detention/Transit Staging Area for processing. *See* Auer Decl. (Aldana Serrano) Ex. 1, ECF No. 12-1 ("A.S. 2023 Form I-213"). Ms. Aldana Serrano was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. She was "processed as NTA [notice to appear]/OR [own recognizance]," released under 8 U.S.C. § 1226 "due to lack of bed space," and served with various forms including Form I-220A.[1] A.S. Form I-213 at 3; Auer Decl. (Aldana Serrano) Ex. 2, ECF No. 12-2 ("A.S. NTA"). Upon release from detention, Ms. Aldana Serrano was served with a notice to appear (Form I-862) and placed in full removal proceedings pursuant to 8 U.S.C. § 1229(a).[2] A.S. NTA at 1. DHS records from the time of her initial detention state that she "does not appear to be

---

[1] Although the parties have not provided Petitioners' Form I-220A, the Court takes judicial notice of the fact that the Form I-220A states that release is subject to 8 U.S.C. § 1226. *See* U.S. Immigration and Customs Enforcement, U.S. Dep't of Homeland Sec., *Order of Release on Recognizance* (2020), https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf ("In accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following condition . . . ."); *see also* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[2] Form I-862 ("notice to appear") states that the non-citizen is in removal proceedings "under section 240 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1229a.

a threat to national security, or public safety." A.S. 2023 Form I-213 at 3. In October 2024, Ms. Aldana Serrano applied for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. for Writ of Habeas Corpus ¶¶ 9, 49, ECF No. 1 ("Pet.") (stating that she has complied with all "ICE and immigration court obligations and has no criminal history").

Petitioner Rafaela del Rosario Salgado Sotomayor is an asylum seeker from Nicaragua. After entering the United States from Mexico in November 2023, she was arrested by DHS Border Patrol and transported to the El Paso Hardened Facility for processing. *See* Auer Decl. (Salgado Sotomayor) Ex. 1, ECF No. 14-1 ("S.S. 2023 Form I-213"). Ms. Salgado Sotomayor was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled and was released on her own recognizance (Form I-220A) under 8 U.S.C. § 1226 due to "lack of space." S.S. Form I-213 at 3; Auer Decl. (Salgado Sotomayor) Ex. 2, ECF No. 14-2 ("S.S. NTA"). Upon release from detention, Ms. Salgado Sotomayor was served with a notice to appear (Form I-862) and placed in full removal proceedings pursuant to 8 U.S.C. § 1229(a). S.S. NTA at 1. DHS records from the time of her initial detention in 2023 indicate that she has no prior criminal history. S.S. 2023 Form I-213 at 3 ("CRIMINAL HISTORY: Negative."). In November 2024, Ms. Salgado Sotomayor applied for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. ¶¶ 12, 52 (stating that she has complied with all "ICE and immigration court obligations and has no criminal history").

Petitioner Yong Qi is an asylum seeker from China. After entering the United States from Mexico in December 2023, he was arrested by DHS Border Patrol near San Diego, California and transported to a nearby border patrol facility for processing. *See* Alvarez Decl. Ex. 1, ECF No. 11-1 ("Y.Q. 2023 Form I-213"). Mr. Qi was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled and was released on his own recognizance (Form I-220A) under 8 U.S.C. § 1226 due to "lack of bed space." Y.Q. 2023 Form I-213 at 3; Alvarez Decl. Ex. 2, ECF No. 11-2 ("Y.Q. NTA"). Upon release from detention, Mr. Qi was served with a notice to appear (Form I-862) and placed in full removal proceedings pursuant to 8 U.S.C. § 1229(a). Y.Q. NTA at 1. DHS records from the time of his initial detention state that he has "[n]o prior criminal history." Y.Q. Form I-213 at 2. In February 2024,

Mr. Qi applied for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. ¶¶ 11, 51 (stating that he has complied with all "ICE and immigration court obligations and has no criminal history").

Petitioner Andres Daniel Vasquez Oviedo is an asylum seeker from Colombia. After entering the United States from Mexico in March 2024, he was arrested by DHS Border Patrol near San Diego, California and transported to a nearby border patrol facility for processing. *See* Razalan Decl. Ex. 1, ECF No. 15-1 ("V.O. 2023 Form I-213"). Mr. Vasquez Oviedo was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, and was released on his own recognizance (Form I-220A) under 8 U.S.C. § 1226 due to "lack of bed space." V.O. 2024 Form I-213 at 3-4; Razalan Decl. Ex. 2, ECF No. 15-2 ("V.O. NTA"). Upon release from detention, Mr. Vasquez Oviedo was served with a notice to appear (Form I-862) and placed in full removal proceedings pursuant to 8 U.S.C. § 1229(a). V.O. NTA at 1. DHS records from the time of his initial detention state that he "does not appear to be a threat to national security, border security, or public safety." V.O. 2024 Form I-213 at 4. In August 2025, Mr. Vasquez Oviedo applied for asylum, withholding of removal, and protection under the Convention Against Torture. Pet. ¶¶ 13, 53 (stating that he has complied with all "ICE and immigration court obligations and has no criminal history").

Petitioner Edvin Manuel Fernandez Sanchez is an asylum seeker from Guatemala. After entering the United States from Mexico in May 2024, he was arrested by DHS Border Patrol and transported to the El Paso Hardened Facility for processing. *See* Auer Decl. (Fernandez Sanchez) Ex. 1, ECF No. 13-1 ("F.S. 2023 Form I-213"). Mr. Fernandez Sanchez was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, and was released on his own recognizance (Form I-220A) under 8 U.S.C. § 1226 due to "lack of space." F.S. 2024 Form I-213 at 3; Fernandez Auer Decl. (Fernandez Sanchez) Ex. 2, ECF No. 13-2 ("F.S. NTA"). Upon release from detention, Mr. Fernandez Sanchez was served with a notice to appear (Form I-862) and placed in full removal proceedings pursuant to 8 U.S.C. § 1229(a). F.S. NTA at 1. DHS records from the time of his initial detention state that he has "[n]o prior criminal history." F.S. Form I-213 at 3. In February 2025, Mr. Fernandez Sanchez

4

1   applied for asylum, withholding of removal, and protection under the Convention Against Torture.

2   Pet. ¶¶ 10, 50 (stating that he has complied with all "ICE and immigration court obligations and

3   has no criminal history").

4         On October 2, 2025, each Petitioner appeared in person at the San Francisco Immigration

5   Court for his or her master calendar hearing. *Id.* ¶ 54. In each case, the government orally moved

6   to dismiss the case, purportedly for the purpose of placing the Petitioner in "expedited removal"

7   proceedings. *Id.* ¶¶ 1, 54. In each case, the presiding immigration judge did not grant the motion;

8   instead, he gave each Petitioner time to respond and set the matter for a future date. *Id.* ¶ 54.

9   Minutes after exiting the courtroom, each Petitioner was arrested by DHS agents. *Id.* ¶ 1.

10         Immediately following their arrest, Petitioners filed a joint petition for a writ of habeas

11   corpus and motion for a TRO. ECF Nos. 1-3. Respondents filed an opposition that same day.

12   ECF No. 5. The Court issued the TRO and ordered Respondents to show cause why a preliminary

13   injunction should not issue. ECF No. 6. On October 7, 2025, Respondents filed a response to the

14   order to show cause. Resp. to O.S.C., ECF No. 10. Petitioners filed a reply on October 9, 2025.

15   Pets.' Reply, ECF No. 17 ("Reply"). After briefing on the preliminary injunction concluded, the

16   parties submitted two stipulations, agreeing to extend the TRO and submit the request for a

17   preliminary injunction for decision without oral argument. ECF Nos. 19, 21.

18   **II.   LEGAL STANDARD**

19         A party seeking a preliminary injunction must establish that "he is likely to succeed on the

20   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

21   balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat.*

22   *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious

23   questions going to the merits – a lesser showing than likelihood of success on the merits – then a

24   preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's

25   favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767

26   F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the

27   Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418,

28   435 (2009).

## III. DISCUSSION

For the reasons set forth below, Petitioners have shown that there are, at minimum, "serious questions" going to the merits of their claims, that they are likely to suffer irreparable harm absent a preliminary injunction, and that the balance of hardships tips sharply in their favor. Because each of the *Winter* factors has been satisfied, the Court grants Petitioners' request for a preliminary injunction.

### A. Petitioners Raise Serious Questions Going to the Merits

Petitioners have demonstrated serious questions going to the merits of their claim that the Due Process Clause of the Fifth Amendment entitles them to a hearing before Respondents may re-detain them.[3] The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has explained that the Due Process Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks and citations omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Even when the government has the initial discretion to detain an individual, its subsequent decision to release the individual gives rise to a protected liberty interest. *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, ___ F. Supp. 3d ___, 2025 WL 2741654, at *6 (N.D. Cal. Sept.

---

[3] The Court does not address Petitioners' substantive due process claims at this time because the relief granted herein, *i.e.*, enjoining Respondents from re-detaining Petitioners without a pre-detention hearing, "obviates the threat of any imminent deprivation of [their] substantive due process rights." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031 n.1 (N.D. Cal. 2025); *see also Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at *4 n.1 (N.D. Cal. Aug. 22, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *17 (N.D. Cal. Oct. 3, 2025).

26, 2025) ("[A]s courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest."). The decision to release creates an "implicit promise" that the individual's liberty will only be revoked if the conditions of release are violated. *Calderon*, 2025 WL 2430609, at *2 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Accordingly, courts in this district – and courts across the country – routinely hold that noncitizens released from custody pending removal proceedings have a protected liberty interest in remaining out of immigration custody. *See, e.g.*, *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, ___F. Supp. 3d ___, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025) ("*Pablo Sequen II*") (collecting cases); *Valencia Zapata*, 2025 WL 2741654, at *6; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025); *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, ___ F. Supp. 3d ___, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-00337-KC, ___ F. Supp. 3d ___, 2025 WL 2691828, at *11 (W.D. Tex. Sept. 22, 2025); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 152 (W.D.N.Y. 2025).

Here, each Petitioner was arrested by DHS officers; each was determined to satisfy the requirements of 8 U.S.C. § 1226(a);[4] and each was released on their own recognizance subject to certain conditions of release.[5] Federal regulations provide that noncitizens detained under Section 1226(a) receive bond hearings at the outset of their detention. *Jennings*, 583 U.S. at 288 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Valencia Zapata*, 2025 WL 2741654, at *2. At the bond hearing, an immigration judge will order release if "the detainee demonstrates by the preponderance of the evidence that he or she is not a threat to national security, a danger to the

---

[4] Detention under 8 U.S.C. § 1226(a) is not mandatory. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("Section 1226(a) creates a default rule for [aliens already present in the United States] by permitting – *but not requiring* – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." (emphasis added)).

[5] Although not at issue here, 8 U.S.C. § 1226(c) provides for mandatory detention of noncitizens that fall into certain enumerated categories involving criminal offenses and terrorist activities.

7

community at large, likely to abscond, or otherwise a poor bail risk[.]" *Salcedo Aceros*, 2025 WL 2637503, at *1 (citation omitted). Once an immigration judge determines that a noncitizen should be released, DHS may not re-arrest that noncitizen "absent a change in circumstance." *Cordero Pelico*, 2025 WL 2822876, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)). Where the release decision was made by a DHS officer, rather than an immigration judge, "the Government's practice has been to [similarly] require a showing of changed circumstances before re-arrest." *Id.* (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)). Thus, under this framework, the DHS officers' decision to release each Petitioner following his or her brief detention created a protectable liberty interest in remaining out of immigration custody. *Salcedo Aceros*, 2025 WL 2637503, at *7 (citing *Morrissey*, 408 U.S. at 482); *Valencia Zapata*, 2025 WL 2741654, at *8.

Given the protectable liberty interest, the question then becomes "what process is due." *Morrissey*, 408 U.S. at 481. The Court applies the three-part test in *Mathews v. Eldridge* to determine what procedures are constitutionally required by the Due Process Clause. 424 U.S. 319, 335 (1976); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (assuming without deciding that *Mathews* applies to immigration detention).[6] Under *Mathews*, the Court must balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the *Mathews* factors weighs in favor of a mandatory pre-deprivation hearing.

**1.    Private Interest**

As discussed above, Petitioners gained a liberty interest in remaining out of immigration

---

[6] The Ninth Circuit routinely applies *Mathews* to due process claims involving removal proceedings. *See Pinchi*, 792 F. Supp. 3d at 1033 n.2 (collecting cases). In addition, in *Rodriguez Diaz*, the Ninth Circuit noted that *other circuits* have applied *Mathews* in considering due process challenges in the immigration detention context. 53 F.4th at 1203-05 (collecting cases).

8

custody when DHS elected to release them on their own recognizance under 8 U.S.C. § 1226. Under federal regulation, DHS's decision to release each Petitioner "necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk." *Valencia Zapata*, 2025 WL 2741654, at *8 (citing 8 C.F.R. § 1236.1(c)(8)). Absent a change in circumstances – which Respondents do not contend is the case here – Petitioners have a strong interest in their freedom from immigration custody. *See Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Salcedo Aceros*, 2025 WL 2637503, at *7.

Despite being released under Section 1226(a), Respondents insist that Petitioners are subject to a different detention authority – 8 U.S.C. § 1225(b) – and that Petitioners are not entitled to due process rights "beyond what § 1225(b) provides." Resp. to O.S.C. at 20-21 (citing *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); and then citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020)). Under Section 1225(b), certain noncitizens are subject to mandatory detention pending conclusion of removal proceedings. 8 U.S.C. § 1225(b)(2); *see also Valencia Zapata*, 2025 WL 2741654, at *3-4. In Respondents' view, because Section 1225(b) applies, Petitioners are subject to mandatory detention and are not entitled "to custody redetermination hearings, whether pre- or post-detention." Resp. to O.S.C. at 12 (citation omitted); *Cordero Pelico*, 2025 WL 2822876, at * 7 ("In other words, the Government's position is that whether Petitioners are in full removal proceedings or not, and regardless of the authority under which it initially detained them, it may at any time subject them to detention without the possibility of release on bond because they are 'applicants for admission' who are 'seeking admission' and thus subject mandatory detention under § 1225(b)(2).").

Respondents' argument rests on a novel interpretation of Section 1225(b), which would "upend decades of practice" and mandate detention for all "applicants for admission," even if the applicant had been released into and lived in the United States for years. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217 (D. Mass. 2025); *see also Pablo Sequen II,* 2025 WL 2935630, at *8. In fact,

until this year, "DHS has applied § 1226(a) and its discretionary release and review of detention to *the vast majority* of noncitizens allegedly in this country without valid documentation" – a practice codified by regulation. *Salcedo Aceros*, 2025 WL 2637503, at *3 (emphasis added). Respondents acknowledge that this is a departure from the government's prior position and practice. Resp. to O.S.C. at 6 ("Until recently, the government interpreted § 1226(a) to be an available detention authority for aliens [present without being admitted or paroled] placed directly in full removal proceedings under § 1229a."). Now, however, the government disavows its decades-old position in light of "legal developments," including its own 2025 designation "restor[ing] the expedited removal scope to 'the fullest extent authorized by Congress.'" *Id.* at 3 (citing 90 Fed. Reg. 8139 (Jan. 24, 2025)). Without citing to a single district court decision that has agreed with this novel construction of Section 1225(b), Respondents ask this Court to adopt its interpretation. The Court declines to do so.

In recent months, district courts across the country have examined the text, structure, agency application, and legislative history of Section 1225(b) and rejected arguments identical to those raised here by Respondents. *See, e.g.*, *Salcedo Aceros*, 2025 WL 2637503, at *8; *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, ___ F. Supp. 3d ___, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States."); *Lopez Benitez v. Francis*, No. Civ. 5937 (DEH), ___ F. Supp. 3d ___, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) (concluding that 1225(b)(2) "clearly does not apply" to a noncitizen who has resided in the country for years); *Rosado*, 2025 WL 2337099, at *11 (finding that the government's "selective reading" of 1225(b)(2) "violates the rule against surplusage and negates the plain meaning of the text"); *Martinez*, 792 F. Supp. 3d at 218 (rejecting the government's "novel interpretation" that 1225(b) applies to noncitizens detained while present in the United States); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) (holding that Section 1226, not 1225(b)(2), governs inadmissible noncitizens residing in the country). The Court agrees with this analysis and rejects Respondents' interpretation that Section 1225(b)(2) applies in these

circumstances. The Court therefore concludes that Petitioners have a significant private interest in their continued liberty and that the first *Mathews* factor favors Petitioners.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor also weighs in favor of Petitioners because there is a significant risk that the government's proposed procedures will erroneously deprive Petitioners of their liberty interests. *See Singh v. Andrews*, No. 1:25-CV-00801, ___ F. Supp. 3d ___, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) ("[T]he risk of an erroneous deprivation of liberty is high where, as here, the petitioner has not received any bond or custody redetermination hearing." (cleaned up)). Civil detentions are only permissible to effectuate statutorily authorized purposes. The purpose for the immigration statute at issue here is two-fold: to ensure the appearance at future immigration appearances and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Thus, when Petitioners were released on their own recognizance following their initial detention in 2023 or 2024, DHS necessarily determined that each was neither a flight risk nor a danger to the community. *See Pablo Sequen II*, 2025 WL 2935630, at *2 ("Section 1226 prohibits the release of a detained noncitizen, whether on bond or conditional parole, unless the noncitizen 'satisfies [the government] that [she] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" (quoting 8 U.S.C. § 1226(a)(4); and then citing 8 C.F.R. § 1236.1(c)(8))).

There is nothing in the record before the Court to indicate that circumstances have changed. To the contrary, the record reflects that Petitioners have attended all immigration-related appointments and hearings, and that none have a criminal record.[7] Respondents do not contend that there has been a change in circumstances. Rather, they argue that Petitioners are subject to mandatory detention under Section 1225(b), regardless of whether they pose a flight or public safety risk. Resp. to O.S.C. at 11, 20-22. Given the government's position that Section 1225(b) applies and that Petitioners are not entitled to a bond hearing, the risk that Petitioners will be

---

[7] Following Petitioners' arrests on October 2, 2025, each Petitioner's Form I-213 was updated to reflect the arrest, and each Form I-213 indicated no criminal history. *See* ECF Nos. 11-3 (Qi); 12-3 (Aldana Serrano); 13-3 (Fernandez Sanchez); 14-13 (Salgado Sotomayor); 15-3 (Vasquez Oviedo).

erroneously deprived of their liberty is high. *Pablo Sequen II*, 2025 WL 2935630, at *11; *Valencia Zapata*, 2025 WL 2741654, at *10; *Salcedo Aceros*, 2025 WL 2637503, at *12; *Lopez Benitez*, 2025 WL 2371588, at *12.

Respondents argue that even if Section 1226(a) applies to Petitioners, it would only entitle them to a post-deprivation rather than a pre-detention hearing. Resp. to O.S.C. at 21 (citing *Rodriguez Diaz*, 53 F.4th at 1196-97). While it is true that Section 1226(a) contemplates a post-deprivation hearing, the Court joins a host of other district courts in concluding that a *pre-deprivation* bond hearing is warranted in these particular circumstances. *See, e.g.*, *Cordero Pelico*, 2025 WL 2822876, at *15-16 (collecting cases). As Judge Chen in *Cordero Pelico* explained:

> Here, the circumstances are different. [DHS] already determined that the petitioners here presented no danger or flight risk, and released them based on this determination. Due to the Government's erroneous position that Petitioners are subject to mandatory detention, however, it detained them despite its own determination that they presented no such risks, and without any finding of changed circumstances. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). Under these circumstances, given the government's conduct, the substantial liberty interests held by Petitioners, and the fact that the government has no evidence and does not contend that Petitioners present any risk of flight or to public safety, a pre-deprivation bond hearing is warranted.

*Id.* at *16. "Moreover, even if Petitioners did receive a bond hearing after being detained for some period after their arrest, that period of detention will likely turn out to be unwarranted, since the government cannot identify any basis to conclude that Petitioners are now dangers to the community or flight risks." *Valencia Zapata*, 2025 WL 2741654, at *11 (citing *Pinchi*, 792 F. Supp. 3d at 1035); *see also Lopez Benitez*, 2025 WL 2371588, at *12. Therefore, the Court concludes that a pre-deprivation hearing is required and that the second *Mathews* factor weighs in Petitioners' favor.

### 3. Government's Interest

As to the government's interest, the Court agrees with numerous other courts that have concluded that the government's interest in re-detaining Petitioners without a pre-deprivation hearing in these circumstances is low. *See, e.g.*, *Cordero Pelico*, 2025 WL 2822876, at *15. DHS "previously made the determination to release [them], and there is no evidence in the record of any

changed circumstances that might cause [DHS] to reconsider its parole determination." *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *6 (N.D. Cal. Sept. 5, 2025). Moreover, whether Respondents "conduct[] a pre-detention hearing – or, indeed, whether Petitioners are in detention or not – will not obstruct the removal process[.]" *See Cordero Pelico*, 2025 WL 2822876, at *15; *see also Pinchi*, 792 F. Supp. 3d at 1035 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.")). Thus, the third and final *Mathews* factor weighs in Petitioners' favor.

* * *

Because all three *Mathews* factors favor Petitioners, they have shown a likelihood of success on the merits, or at the very least a serious question going to the merits, of their due process claim.

### B. Petitioners Face Irreparable Harm

Petitioners have demonstrated a likelihood of irreparable harm in the absence of a preliminary injunction. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). Petitioners are currently out of custody due only to court order, and "there is no reason to believe that the government will not immediately re-detain them" upon expiration of the TRO. *Cordero Pelico*, 2025 WL 2822876, at *16. As detailed above, Respondents' position is that Petitioners are subject to mandatory detention under Section 1225(b)(2) – a provision the Court concludes is inapplicable to Petitioners – and that Petitioners are entitled to no process to challenge any future detention. Given this, it is likely that Petitioners could be detained without a hearing pending conclusion of full removal proceedings, which could take months or even years.[8] *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see also Jennings*, 583 U.S. at

---

[8] As of the close of briefing, Petitioners were still submitting written oppositions to the government's motions to dismiss in their immigration proceedings. Reply at 5 n.1. If the motions to dismiss are granted despite Petitioners' oppositions, Petitioners will have the right to appeal the dismissals to the Board of Immigration Appeals, and expedited removal proceedings cannot be initiated against them during the appeal period. 8 C.F.R. § 1003.6(a). Petitioners' counsel represents that an appeal to the Board of Immigration Appeals is unlikely to be adjudicated in less

301 ("[N]either [section 1225(b)(1) nor (b)(2)] can reasonably be read to limit detention to six months."). The likely unconstitutional deprivation of liberty that Petitioners face is an irreparable harm.

### C. The Balance of Hardships Tips Sharply in Petitioners' Favor

The final two *Winter* factors, the balance of equities and the public interest, tips sharply in Petitioners' favor. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). In particular, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

The only interest asserted by the government is the "steady enforcement of its immigration laws," but Respondents offer no explanation as to how a pre-deprivation hearing interferes with this interest. Resp. to O.S.C. at 23-24. At most, the government faces a short delay in detaining Petitioners if it ultimately demonstrates, by clear and convincing evidence,[9] that their detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Thus, "the potential harm to [Petitioners] is significant, while the potential harm to the government is minimal." *Pablo Sequen v. Kaiser*, 793 F. Supp. 3d 1114, 1120 (N.D. Cal. 2025) ("*Pablo Sequen I*"). Faced with "a conflict between [administrative] concerns and preventable human suffering,

---

than six months. Reply at 5 n.1.

[9] For the reasons set forth in *Pablo Sequen II*, prior to any future immigration detention, Petitioners are "entitled to notice and a pre-deprivation hearing at which a neutral arbiter must determine whether there is any valid basis for their detention – *i.e.*, whether they pose a threat to the community or a flight risk that can only be mitigated through detention." 2025 WL 2935630, at *13. At such hearing, the government must establish by clear and convincing evidence that a valid basis for detention exists. *Id.*

14

[the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor." *Hernandez* v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

* * *

Because Petitioners satisfy all the *Winter* factors and such relief is necessary to maintain the status quo, Petitioners' motion for a preliminary injunction is granted as detailed below. The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioners' request for a preliminary injunction is **GRANTED**, as modified.[10] Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioners in any form without notice and a pre-deprivation hearing before a neutral decisionmaker in which a determination is made that Petitioners are either dangers to the community or flight risks such that their physical custody is required. This Order shall remain in effect until further order of the Court.

**IT IS SO ORDERED.**

Dated: November 28, 2025

Eumi K. Lee
United States District Judge

---

[10] Because Petitioners are not currently detained and Respondents are enjoined from re-detaining them without a pre-detention hearing, the Court does not reach Petitioners' request to enjoin their transfer to another district. *See Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *5 (N.D. Cal. Sep. 3, 2025). Should circumstances change, Petitioners may seek additional relief as is appropriate.